IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PEERLESS INSURANCE COMPANY**<br><br>**Plaintiff,**<br><br>v.<br><br>**THE PENNSYLVANIA CYBER CHARTER SCHOOL**<br><br>**Defendant** | Case No: |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Peerless Insurance Company (Peerless), as and for its Complaint for Declaratory Judgment, hereby alleges as follows:

**NATURE OF THE CASE**

1. This is an insurance coverage dispute in which Peerless seeks a judicial determination of its rights and obligations, if any, under a policy of liability insurance, policy no. CBP 8890270 (the Liability Policy) and a commercial umbrella policy, policy no. CU 8890470 (the Umbrella Policy), that Peerless issued to defendant The Pennsylvania Cyber Charter School (PCCS). The Liability Policy and the Umbrella Policy are hereinafter referred to collectively as the Policies. A copy of the Liability Policy and the Umbrella Policy are attached hereto as Exhibits A and B, respectively.

2. Peerless seeks a declaration from this Court that it has no duty to provide coverage to PCCS, either for defense or for indemnification, for the claims asserted in an Underlying Action ("the Underlying Action") filed by several school districts (the School Districts) against PCCS.

3. The Underlying Action arises in the context of educational services provided by PCCS, an approved public cyber charter school, to children living in various school districts within western Pennsylvania.

4. Upon information and belief, based upon the allegations asserted in the underlying action, PCCS provides on-line educational classes and course materials, under applicable laws and regulations, for children in grades K through 12.

5. The children who attend PCCS, and/or who utilize its educational services are children who live within the Commonwealth of Pennsylvania and, upon information and belief, would otherwise be qualified to attend public schools located in the various Pennsylvania school districts.

6. Upon information and belief, under applicable laws and regulations, including the Pennsylvania Cyber Charter School laws, PCCS is allegedly entitled to receive from each such school district the academic financial allotment for those eligible students from each school district who attend PCCS.

7. In the Underlying Action, the School Districts allege that PCCS was compensated by local school districts (either directly or via payment from the Pennsylvania Department of Education) for educating students who would otherwise have been educated by the School Districts.

8. The School Districts in the Underlying Action have alleged that they do not allow children under age 5 to attend kindergarten.

9. The School Districts in the Underlying Action have alleged that PCCS accepted children under age 5 for the school years 2002-2003 through 2010-2011, and was paid for the education services provided for those children under age 5.

10. The operative pleading in the Underlying Action (presently the Amended Complaint) alleges that the School Districts understood and/or believed that PCCS was entitled to receive compensation for the education services provided to the children under age 5.

11. The School Districts filed the Underlying Action, a class action lawsuit, seeking to recover the funds paid to PCCS for the education of the ineligible under-age-5 children, asserting cause of action for "Conversion," "Restitution" and "Mistake of Law." A copy of the Amended Complaint filed in the Underlying Action is attached hereto as Exhibit C.

12. PCCS sought insurance coverage under the Liability Policy for the claims asserted against it in the Underlying Action.

13. Peerless provided, and continues to provide, a defense to PCCS in the Underlying Action under the Liability Policy, subject to a full and complete reservation of its rights under the Policy.

14. Peerless now seeks a declaration that it does not owe indemnity coverage under the Policies for the claims asserted in the Underlying Action, and that it does not owe PCCS a defense in that action.

15. A present and justiciable controversy exists between the parties, given the nature of the claims asserted against PCCS in the Underlying Action, PCCS's demand for defense and indemnification from Peerless, and Peerless' assertion that it does not owe coverage to PCCS for the Underlying Action.

16. Accordingly, based upon the allegations contained in the Amended Complaint filed in the Underlying Action, Peerless seeks a declaration that it has no duty to defend or indemnify PCCS in the Underlying Action and, further, that Peerless is entitled to withdraw the defense that it has been providing to PCCS under a reservation of rights.

## THE PARTIES

17. Plaintiff, Peerless, is a corporation organized and existing under the laws of the State of New Hampshire, is a company authorized to issue policies of, inter alia, liability insurance within the Commonwealth of Pennsylvania, and maintains its principal place of business in New Hampshire.

18. Defendant, The Pennsylvania Cyber Charter School (PCCS), is a non-profit corporation organized and existing under the laws of the Commonwealth of Pennsylvania, and maintains its principal place of business at 1000 3rd Street, Suite 1, Beaver, Pennsylvania.

## JURISDICTION AND VENUE

19. Subject matter jurisdiction is appropriate in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1332(a), based upon the complete diversity of the citizenship of the parties, which are domiciled in Pennsylvania and New Hampshire, and because the amount in controversy exceeds $75,000.

20. Personal jurisdiction is appropriate in this judicial district because PCCS is domiciled and therefore resides in Pennsylvania, maintains its principal place of business in Beaver, Pennsylvania, and regularly conducts its business activities in this judicial district.

21. Venue is proper in the judicial district pursuant to 28. U.S.C. § 1391(b)(1) because PCCS, a Pennsylvania non-profit corporation, resides in this judicial district, maintains its principal place of business in this judicial district, conducts its business in this district, and is subject to personal jurisdiction in this district.

22. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)(2) based upon the fact that substantial acts giving rise to the claims asserted herein occurred in this judicial district, including the negotiation of the insurance contract at issue herein.

23. An actual case and controversy of a justiciable nature, pursuant to Article III of the United States Constitution and 28 U.S.C. §§2201 and 2202, exists between Peerless and PCCS.

24. This case and controversy is ripe for adjudication, and involves the rights, liabilities and legal relations of the parties under contracts of insurance, including the defense and indemnity obligations, if any, of Peerless owed to PCCS under either or both of those contracts.

25. There is a real and substantial controversy between Peerless and PCCS, involving adverse legal interests, of sufficient immediacy and reality to warrant a judicial determination and the issuance of a declaratory judgment, as litigation with respect to the parties' dispute is imminent and inevitable concerning insurance coverage relating to an underlying lawsuit pending against PCCS.

26. A judgment entered in this action will serve a useful purpose in clarifying and settling the legal relations of the parties relating to the defense and indemnity obligations of Peerless, if any, under the insurance contract at issue, and will terminate and afford relief from the current uncertainty, insecurity and controversy giving rise to this proceeding.

27. This controversy may be resolved by a judgment in this action without the necessity of other suits, or the joinder of any other parties.

## FACTUAL BACKGROUND

28. This is a declaratory judgment action in which Peerless is seeking a judgment from the Court declaring that Peerless does not owe any coverage to PCCS under the Policies for the claims asserted against PCCS in the Underlying Action.

29. PCCS is a "cyber charter school" operating pursuant to Pennsylvania statutes, regulations, codes and rules pertaining to the operation of charter schools and/or cyber charter schools.

30. Peerless issued the Policies to PCCS for the policy period from February 20, 2012 to February 20, 2013.

31. On or about March, 2012, PCCS was sued in the Court of Common Pleas of Feyette County, Pennsylvania, in the Underlying Action, styled as *Albert Gallatin Area, et al., v. The Pa. Cyber Charter*, Case No. 442 OF 2012, G.D.

32. The Amended Complaint filed by the School Districts in the Underlying Action alleges that PCCS is authorized to operate a cyber charter school pursuant to Pennsylvania's Cyber Charter School Law (CCSL), 24 P.S. §§17-1741-A, *et seq.*; that PCCS offered courses and educational materials, to students who resided in the School Districts' counties; that under the CCSL, PCCS was paid directly by the students' home School District, or, alternatively, by the Pennsylvania Department of Education (Pa. Dep't of Ed.), which would then reduce the subsidy for each such student due to such home School District accordingly; that during the school years 2002-2003 through 2010-2011, the School Districts received requests for payment from PCCS for students from the School Districts who attended/received educational services from PCCS; and that the School Districts issued, and PCCS received, payment for such students. Exhibit B, ¶¶3-7.

33. The Amended Complaint filed in the Underlying Action alleges further that certain of the PCCS students were not eligible for enrollment in the School Districts' schools due to their policies of not permitting the enrollment of students in kindergarten who had not reached the "age of eligibility" – five (5) years of age – as of their date of entry; that PCCS was not

entitled to be paid by the School Districts for the enrollment of such ineligible students; and that the School Districts are unable to recoup such amounts from the Pa. Dep't of Ed. Exhibit B, ¶¶8-11.

34. The Amended Complaint in the Underlying Action asserts a cause of action for "Conversion – Tort," asserting that PCCS has retained funds for which it is not entitled; "Equity – Restitution," asserting that PCCS has been unjustly enriched by the School Districts; and for "Equity – Mistake of Law," asserting that the School Districts issued payment to PCCS under the mistaken belief that they had a legal duty to fund the education of all students who enrolled with PCCS, regardless of the School Districts' enrollment policies, and, as a result, PCCS, was unjustly enriched. Exhibit B, ¶¶12-20.

35. The Amended Complaint in the Underlying Action also asserts "Class Action Allegations," on behalf of a class purportedly comprised of all school districts in Pennsylvania who, directly or through the Pa. Dep't of Ed., paid PCCS for the enrollment of students who were ineligible for enrollment in their home school districts. Exhibit B, ¶¶21-31.

36. PCCS has demanded coverage and a defense with respect to the Underlying Action, under the Liability Policy; in particular, PCCS sought coverage and a defense under the School Leaders Errors and Omissions Liability Coverage Form which is attached to and a part of the Liability Policy.

37. Peerless agreed to provide a defense to PCCS in the Underlying Action, subject to a complete reservation of Peerless' rights to decline coverage pursuant to the terms and conditions of the Liability Policy.

38. Peerless now seeks a judgment declaring that Peerless has no obligations to PCCS under the Liability Policy in connection with the Underlying Action, including a declaration that

Peerless does not have a duty to defend PCCS in the underlying action, and permitting Peerless to withdraw the defense that it agreed to provide, and continues to provide, subject to the aforementioned reservation of Peerless' rights.

39. Peerless also seeks a judgment declaring that Peerless has no obligations to PCCS under the Umbrella Policy, either presently or upon exhaustion of the limits of the Liability Policy, in connection with the Underlying Action.

## THE LIABILITY POLICY

40. The Liability Policy includes business property and general liability coverage forms, including a School Leaders Errors and Omissions coverage form (form 26-20), and provides a limit of $1 million per "wrongful act;" the policyholder is responsible for a $10,000 deductible.

41. PCCS has not sought, and Peerless has not provided, a defense in the Underlying Action under the business property or general liability coverage forms of the Policy, and there is no coverage for the claims asserted by the School Districts against PCCS under those coverage forms.

42. The School Leaders Errors and Omissions coverage form states, in relevant part, as follows:

**SECTION I – COVERAGE**

  **A. Insuring Agreement**

    1. We will pay those sums that the insured becomes legally obligated to pay because of "loss" arising from a "wrongful act" to which this insurance applies.

    2. The amount we will pay for "loss" under paragraph 1. above is limited as described in **SECTION III - LIMIT OF INSURANCE AND DEDUCTIBLE.**

    3. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Section **I.B. Defense and Defense Expense.**

4. This insurance only applies to "wrongful acts" that are committed:

   a. Anywhere in the world if the insured's responsibility to pay "loss" is determined in a "suit" brought on the merits in the United States of America (including its territories and possessions), Puerto Rico or Canada, or in a settlement we agree to; and

   b. During the "policy period" if a "claim" is first made against any insured during the "policy period" or any Discovery Period (provided in accordance with **SECTION V – DISCOVERY PERIODS**); or

   c. Prior to the "policy period" and on or after the "retroactive date", if any, but only if:

      (1) On or before the effective date of the first School Leaders Errors and Omissions Liability Coverage Part issued by us and continuously renewed and maintained by the insured:

         (a) The insured did not give notice to any prior insurer of such "wrongful act"; and

         (b) The insured had no knowledge of such "wrongful act" likely to give rise to a "claim" hereunder; and

      (2) A "claim" is first made against any insured during the "policy period" or any Discovery Period (provided in accordance with **SECTION V – DISCOVERY PERIODS**).

\* \* \*

**B. Defense and Defense Expense**

1. We will have the right and duty to defend the insured against any "suit" seeking:

   a. "Loss" because of a "wrongful act" to which this insurance applies. But:

      (1) When the Each Wrongful Act Limit or Aggregate Limit has been used up in the payment of "loss", our duty to defend ends with respect to any "suit" seeking "loss" subject to such exhausted limit; and

      (2) We will have no duty to defend the insured against any "suit" seeking "loss" to which this insurance does not apply.

\* \* \*

**C. Exclusions**

This insurance does not apply to:

…

**8. Illegal Profit or Advantage**

>   Any insured who commits a "wrongful act" that gains or causes another to gain personal profit or advantage to which the insured or other person was not legally entitled.

* * *

## SECTION VI – DEFINITIONS

...

>   **B.** "Claim" means:
>
>      **1.** A written demand for monetary damages, or injunctive or other non-monetary relief; or
>
>      **2.** A "suit"
>
>   against an insured for a "wrongful act" to which this insurance applies.
>
>   ...
>
>   **H.** "Loss" means monetary damages, judgments (including prejudgment interest awarded against the insured on that part of the judgment paid by us), or settlements. "Loss" does not include:
>
>      **1.** Tuition expenses. However, "loss" does include tuition expenses if, at the time of the "wrongful act", you had programs and facilities that would have provided appropriate special education and related services in accordance with the Individuals with Disabilities Education Act of 1990 and any amendments.
>
>      ...
>
>      **8.** Matters deemed uninsurable according to the law under which this policy is construed.
>
>   **N.** "Wrongful act" means any actual or alleged act, breach of duty, neglect, error, omission, misstatement, or misleading statement committed by the insured, or by any person for whose acts the insured is legally liable, while in the course of performing "educational institution" duties.

>    43.    An Endorsement to the Policy states as follows, in relevant part:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**PENNSYLVANIA CHANGES**

This endorsement modifies insurance provided under the following:

SCHOOL LEADERS ERRORS AND OMISSIONS LIABILITY COVERAGE PART

...

C. Paragraph **H.** under **SECTION VI – DEFINITIONS** is replaced by the following:

H. "Loss" means monetary damages, judgments or settlements. "Loss" does not include:

1. Tuition expenses. However, "loss" does include tuition expenses if, at the time of the "wrongful act", you had programs and facilities that would have provided appropriate special education and related services in accordance with the Individuals with Disabilities Education Act of 1990 and any amendments.

...

8. Matters deemed uninsurable according to the law under which this policy is construed.

44. Pursuant to the terms, conditions and exclusions of the Policy, no coverage is afforded for any of the claims asserted against PCCS in the Underlying Action.

## THE UMBRELLA POLICY

45. The Umbrella Policy and provides a limit of $1 million per "wrongful act;" the policyholder is responsible for a $10,000 deductible.

46. Peerless insurance Company issued the Umbrella Policy to PCCS for the period from 2/20/2012 to 2/20/2013. The Umbrella Policy provides limits of $5 million per occurrence, offense or wrongful act and general aggregate.

47. The UMBRELLA GENERAL LIABILITY COVERAGE FORM, which is part of the Umbrella Policy, provides in relevant part as follows:

SECTION I – COVERAGE

1. **Insuring Agreement**

    a. We will pay on behalf of the insured those sums in excess of the "retained limit" that the insured becomes legally obligated to pay as damages because of "bodily

injury", "property damage" or "personal and advertising injury" to which this insurance applies. The amount we will pay is limited as described in **SECTION III – LIMITS OF INSURANCE**. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under paragraph 2. Defense And Expense Of Claims And Suits under **SECTION I – COVERAGE**.

    **b.** This insurance applies to:

        (1)    "Bodily injury" or "property damage" only if:

            (a) The "bodily injury" or "property damage" occurs during the Policy Period; and

            (b) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

            (c) Prior to the Policy Period, no insured listed under paragraph 1. of SECTION II – WHO IS AN INSURED and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part…

* * *

**2. Defense And Expense Of Claims And Suits**

    **a. Defense, Investigation And Settlement**

        (1)    We shall have the right and duty to defend the insured against any claim or "suit" seeking damages to which this insurance applies when:

            (a) Such damages are not covered by "scheduled underlying insurance" or "other underlying insurance"; or

            (b) The applicable limits of liability of the "scheduled underlying insurance" or "other underlying insurance" have been exhausted by payment of judgments or settlements.

        However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply.

* * *

48. The Umbrella Policy also includes a COMMERCIAL UMBRELLA LIABILITY COVERAGE PART DECLARATIONS EXTENSION endorsement, which modifies and amends the COMMERCIAL UMBRELLA GENERAL LIABILITY COVERAGE FORM as follows:.

> THIS ENDORSEMENT CHANGES THE POLICY.
> PLEASE READ IT CAREFULLY.
>
> SCHOOL LEADERS ERRORS AND OMISSIONS LIABILITY -
> FOLLOW FORM 14-149 (10/10)
>
> THIS IS CLAIMS MADE INSURANCE. EXCEPT AS OTHERWISE PROVIDED THIS INSURANCE APPLIES ONLY TO CLAIMS MADE AGAINST THE INSURED DURING THE POLICY PERIOD. PLEASE READ THE ENTIRE FORM CAREFULLY.
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL UMBRELLA LIABILITY COVERAGE PART
>
> When School Leaders Errors and Omissions Liability is shown in the Schedule of Underlying Insurance and for the purposes of this coverage only:
>
> A. The following are added to paragraph 1. Insuring Agreement under SECTION I - COVERAGE:
>
>   1. We will pay on behalf of the "insured" those sums in excess of the "retained limit" that the "insured" becomes legally obligated to pay because of "loss" arising from a "wrongful act" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under paragraph 2. Defense And Expense Of Claims And Suits. The amount we will pay for "loss" is limited as described in SECTION III - LIMITS OF INSURANCE.
>
>   2. This insurance applies to "loss" described in paragraph 1. above to the extent of coverage afforded by valid scheduled underlying insurance" that is applicable to such "loss" or would have been applicable but for the exhaustion of the limits of the "scheduled underlying insurance". The coverage provided:
>
>       a. Will follow the provisions, exclusions and limitations of the "scheduled underlying insurance" unless otherwise directed by this insurance; and

  b. Will be subject to Condition 13. Maintenance of Scheduled Underlying Insurance.

  However, regardless of the extent of "scheduled underlying insurance", this insurance does not apply to:

   (1) Any "wrongful act" related to the administration of any employee benefit plan; or
   (2) Any "claim" arising out of any responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974 or any amendments thereto.

B. Paragraph 2. Defense And Expense Of Claims And Suits applies except as amended below:

 1. Provision a.(3) is replaced by the following:

  (3) At our discretion, we may:

   (a) Investigate any "occurrence", "offense", "wrongful act" or "claim"; and

   (b) Settle any "claim" of which we assume Charge of the settlement or defense.

 2. Paragraph 2. Defense And Expense Of Claims And Suits does not apply to:

  a. Any "suit" seeking solely injunctive or other nonmonetary relief; or

  b. Any coverage that may be provided in the "scheduled underlying insurance" for which payment or reimbursement of defense expenses is subject to an aggregate limit including, but not limited to, defense coverage for "suits" involving asbestos or the procuring, maintaining or effecting adequate insurance.

C. Provisions 1.b., 2. and 3. under SECTION II - WHO IS AN INSURED do not apply.

D. SECTION III - LIMITS OF INSURANCE applies except as amended below:

 1. Paragraph 4. is replaced by the following:

  4. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of all:

   a. Damages because of "bodily injury", "property damage" and "personal and advertising injury" arising out of any one "occurrence" or one "offense"; and

  b. "Loss" arising out of any one "wrongful act" to which this insurance applies. A single "wrongful act" or a series of causally connected "wrongful acts" will be considered one "wrongful act".

2. The following is added to paragraph 5.:

   If the Aggregate Limit of the "scheduled underlying insurance" is reduced or exhausted by payments for "loss" because of "claims" first made during the "policy period" or during a Discovery Period to which this insurance applies, the Limits of Insurance of this Coverage Part will apply in excess of such reduced or exhausted aggregate limits of liability.

3. The following is added to paragraph 6.:

   If the limits of liability of the "scheduled underlying insurance" are reduced or exhausted by payments for "loss" because of "claims" first made prior to the "policy period", the Limits of Insurance of this Coverage Part will apply as if such payment had not been made.

E. SECTION IV - CONDITIONS apply except as amended below:

             \*\*\*

2. The following is added to Condition 13. Maintenance of Scheduled Underlying Insurance:

   You agree that "scheduled underlying insurance" shall remain in force during any Discovery Period provided by this Coverage Part. Your failure to comply with this agreement shall not invalidate this policy. However, in the event of "loss", we will pay only to the extent that we would have paid had you maintained such "scheduled underlying insurance".

F. For the purposes of this endorsement, SECTION V - DEFINITIONS is amended as follows:

1. Definition 24. is replaced by the following:

   24. "Suit" means a suit as it is defined in The School Leaders Errors and Omissions Liability Coverage that is provided in the "scheduled underlying insurance".

2. The following definitions are added:

"Claim" means a claim as it is defined in The School Leaders Errors and Omissions Liability Coverage that is provided in the "scheduled underlying insurance".

\*\*\*

"Loss" means loss as it is defined in the School Leaders Errors and Omissions Liability Coverage that is provided in the "scheduled underlying insurance". If prejudgment interest is included as "loss" in the "scheduled underlying insurance", provision b.(1)(f) of paragraph 2. Defense And Expense Of Claims And Suits under SECTION I - COVERAGE does not apply.

\*\*\*

"Wrongful act" means a wrongful act as it is defined in the School Leaders Errors and Omissions Liability Coverage that is provided in the "scheduled underlying insurance".

49. The Liability Policy is listed in the declarations of the Umbrella Policy identifying "scheduled underlying insurance" as defined in the Umbrella Policy.

50. Per the terms, conditions and endorsements of the Umbrella Policy, it follows the form of the Liability Policy, and the coverage provided under the Umbrella Policy with regard to School Leaders Errors and Omissions coverage is the same as that provided under the Liability Policy.

## Count I – Declaratory Judgment

51. Peerless repeats and reiterates the allegations and averments contained in paragraphs 1 through 50 above as though set forth at length herein.

52. The Policies unambiguously do not cover, and exclude from the coverage provided under each, the claims asserted against PCCS in the Underlying Action.

53. Specifically, Exclusion 8. of the Liability Policy bars coverage under the policy for any insured who commits a "wrongful act" that gains or causes another to gain personal profit or advantage to which the insured or other person was not legally entitled.

54. By its terms, the Umbrella Policy incorporates the terms, conditions and exclusions of the Liability Policy – the "scheduled underlying insurance" – including Exclusion 8.

55. The allegations set forth in the Amended Complaint in the Underlying Action make clear that the School Districts seek to recover from, and impose liability upon, PCCS based upon their position that PCCS gained a profit or advantage from the School Districts to which it, PCCS, was not legally entitled.

56. The School Districts' claims, therefore, are expressly excluded by the explicit terms of the "Illegal Profit or Advantage" exclusion, Exclusion 8.

57. In addition, the claims asserted, and amounts claimed, in the Underlying Action do not fall within in the definition of "Loss" provided in the Policies, because the School Districts seek to recover from PCCS (by way of monetary damages/judgments) the return of tuition expenses.

58. In addition, the claims asserted, and amounts claimed, in the Underlying Action do not fall within in the definition of "Loss" provided in the Policies, because the School Districts seek to recover from PCCS "matters deemed uninsurable" according to the law of Pennsylvania.

59. The Policies provide coverage for "those sums that the insured becomes legally obligated to pay because of "loss". . . to which this insurance applies."

60. The claims asserted, and amounts claimed, in the Underlying Action do not constitute "Loss" as defined in the Policies nor an insurable loss as interpreted by the courts of Pennsylvania.

61. The School Districts in the Underlying Action seek the repayment, reimbursement and/or disgorgement of educational tuition payments for which the School Districts claim PCCS was not legally entitled to accept and retain.

62. The School Districts do not seek to recover from, or to impose liability upon, PCCS because of a "Loss" covered under in the Policy.

63. In addition, the School Districts' claims are uninsurable as a matter of Pennsylvania public policy.

64. For the foregoing reasons, Peerless does not owe a duty to PCCS under the Policies to provide a defense or indemnity to PCCS in connection with the Underlying Action.

65. Furthermore, Peerless is entitled, and should be permitted, to withdraw the defense that it has provided, and continues to provide, to PCCS under the Liability Policy subject to a full and complete reservation of Peerless' rights.

**WHEREFORE,** Peerless demands the following relief:

(1) A declaration, and judgment, that Peerless does not owe any indemnity coverage obligations to PCCS under the Policies in connection with the Underlying Action;

(2) A declaration, and judgment, that Peerless does not owe PCCS a defense in the Underlying Action;

(3) A declaration, and judgment, that Peerless is entitled to withdraw from the defense of PCCS in the Underlying Action; and

(4) An order granting Peerless leave to withdraw the defense that it has provided, and continues to provide to PCCS in the Underlying Action.

(5) Such other and further relief as to the Court may seem just and proper.

                                          **NELSON LEVINE de LUCA & HAMILTON**

                                 **BY:** _____
                                        MICHAEL J. KURTIS, ESQUIRE
                                        *ATTORNEYS FOR PLAINTIFF*
                                        PEERLESS INSURANCE COMPANY

Dated: 11/20/2012