IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PEERLESS INSURANCE COMPANY, | ) |
| Plaintiffs, | ) |
| | ) Civil Action No. 2:12-cv-1700 |
| v. | ) |
| | ) Judge Mark R. Hornak |
| THE PENNSYLVANIA CYBER CHARTER SCHOOL, | ) |
| Defendant. | ) |

## OPINION

**Mark R. Hornak, United States District Judge**

This is a declaratory judgment action brought pursuant to 28 U.S.C. § 2201[1] to resolve whether Plaintiff Peerless Insurance Company ("Peerless") has a duty to defend and indemnify Defendant The Pennsylvania Cyber Charter School ("PA Cyber") under the terms of a policy of liability insurance and a commercial umbrella policy (collectively "Policy") PA Cyber purchased from Peerless against a lawsuit filed by four Pennsylvania school districts in the Fayette County Court of Common Pleas.

Pending before the Court are the parties' cross-motions for summary judgment. ECF Nos. 25 and 26. The Court has considered the Motions, the parties' briefs in support, ECF Nos. 28 and 30, responses, ECF Nos. 31 and 33, and replies, ECF Nos. 34 and 35, and their respective statements of material facts. ECF Nos. 27 and 32. For the reasons that follow, the Court will

---

[1] "In a case of actual controversy within its jurisdiction...(exceptions omitted)...any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a). The Court has jurisdiction over this case under the authority of 28 U.S.C. § 1332(a), as there is complete diversity between the parties and the amount in controversy, exclusive of costs and interest, is greater than $75,000.

1

grant summary judgment for the Defendant to the extent that it concludes as a matter of law that Peerless has a duty to defend PA Cyber under the policies at issue.

I. **BACKGROUND**

This insurance coverage dispute originates in the language of the Pennsylvania Charter School Law ("the Charter School Law"), 24 Pa. Cons. Stat. § 17-1701-A, *et seq*. That law established charter schools – "independent public schools" funded by payments from the school district where each charter school student resides. 24 Pa. Cons. Stat. §§ 17-1703-A, 17-1725-A(a)(2)-(3), (5). PA Cyber is a charter school. Defendant's Concise Statement of Material Facts ("DSOF"), ECF No. 27, ¶ 6. For its kindergarten program, PA Cyber has accepted children as young as four years of age. *Id.*

In 2006, the Slippery Rock Area School District ("Slippery Rock") objected to PA Cyber's request of payments for students who enrolled in its kindergarten program but were too young to be eligible for Slippery Rock's own kindergarten program, which began at age five. *Id.* Pursuant to the procedure established in the Charter School Law, the Pennsylvania Department of Education ("PDE") held a hearing to determine whether Slippery Rock should pay those funds to PA Cyber. *See* 24 Pa. Cons. Stat. § 17-1725-A(a)(5)-(6). The PDE decided that PA Cyber was indeed entitled to payments for such students. DSOF ¶ 6. Slippery Rock challenged the PDE's decision in Pennsylvania Commonwealth Court, but in 2009, the Commonwealth Court upheld it. *Slippery Rock Area Sch. Dist. v. Pa. Cyber Charter Sch.*, 975 A.2d 1221 (Pa. Commw. Ct. 2009). Slippery Rock then appealed to the Pennsylvania Supreme Court, which in 2011 reversed the Commonwealth Court and held that while the Charter School Law gave PA Cyber the authority to set its own minimum admission age, school districts only had a duty to fund the education of students who were age-eligible to enroll in their own kindergarten

2

programs. *Slippery Rock Area Sch. Dist. v. Pa. Cyber Charter Sch.*, 31 A.3d 657, 667 (Pa. 2011).[2]

In response to the Pennsylvania Supreme Court's decision in *Slippery Rock*, the PDE released a statement which adopted new policies regarding the submission of invoices by charter schools for payments for four-year-old students. ECF No. 26-5 at 8-9. That statement included the following declaration concerning the *Slippery Rock* holding:

> Because the Court did not explicitly state that its decision was retroactive, the Department will process subsidy deductions from school districts and make payment to charter schools for any 4-year-old kindergarten students enrolled in charter schools for any time period prior to November 23, 2011. In addition, the Department will not provide refunds to school districts for deductions made from school districts and subsequent payments to charter schools for 4-year-old kindergarten students enrolled in charter schools for any time period prior to November 23, 2011.

*Id.* In March 2012, four western Pennsylvania school districts sued PA Cyber in the Fayette County Court of Common Pleas ("the Underlying Lawsuit"). ECF No. 1 at ¶ 31. The plaintiffs later filed an amended complaint ("the Underlying Complaint") asserting causes of action for conversion, restitution, and "mistake of law"[3] and requesting class action certification. ECF No. 26-5. That Complaint alleges that from the 2002-03 school year through the 2010-11 school year, PA Cyber requested and received certain payments from school districts who believed such payments were required under the Charter School Law, but to which PA Cyber was not entitled (the Complaint does not explicitly mention the *Slippery Rock* decision, but the plaintiffs attached

---

[2] The Pennsylvania Supreme Court did not hold that such payments by local school districts were *ultra vires* and prohibited by law, but only that they were not mandated. Presumably then, PDE could not "enforce" the Charter School Law against such a school district which failed to make such payments.

[3] The Pennsylvania Supreme Court has defined "mistake of law" as "a mistake as to the legal consequences of an assumed state of facts." *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1255 (Pa. 2006) (quoting *Betta v. Smith*, 81 A.2d 538, 539 (Pa. 1951)). That court has allowed equitable relief (including restitution) under the mistake of law doctrine pursuant to "the fundamental principle that no one shall be allowed to enrich himself unjustly at the expense of another by reason of an innocent mistake of law." *Id.* (quoting *First Nat'l Bank of Sunbury v. Rockefeller*, 5 A.2d 205, 207 (Pa. 1939)). However, "ignorance of mistake of law with full knowledge of the facts is not grounds for equitable relief." *Id.* (citing *Rockefeller*, 5 A.2d at 206).

3

the PDE's statement concerning the effect of *Slippery Rock*). *Id.* at 4-5. According to that Complaint, the plaintiffs filed suit as a result of the PDE's declaration that it would not provide refunds for any payments for four-year old students issued prior to November 23, 2011. *Id.* at 5.[4]

At the time the Underlying Lawsuit was filed, PA Cyber was insured by Peerless under a School Leaders Errors and Omissions Liability Insurance Policy, No. CBP 8890270 ("the liability policy"), and a Commercial Umbrella Liability Coverage Policy, No. CU 8890470 ("the umbrella policy"). DSOF, ¶¶ 1-2. Both policies covered the period of February 20, 2012 through February 20, 2013. *Id.* Under the terms of the liability policy, Peerless has a duty to defend and indemnify PA Cyber against any lawsuit involving a "loss" because of a "wrongful act" committed by PA Cyber. ECF No. 25-4 at 7. The umbrella policy covers any sums in excess of the retained limit on the underlying insurance (the liability policy) up to the limits of the umbrella coverage. *Id.* at 34-35. Pursuant to those policies, Peerless agreed to defend PA Cyber in the Underlying Lawsuit subject to a reservation of rights. ECF No. 30-7. Peerless then launched this action seeking a declaration of its rights and obligations under the policies. ECF No. 1 at ¶¶ 1-2.

## II. LEGAL STANDARD

The standard for summary judgment in a declaratory judgment action is the same as for any other type of relief. *Pellegrino Food Products Co., Inc. v. Am. Auto. Ins. Co.*, 655 F. Supp. 2d 569, 574-75 (W.D. Pa. 2008) (citing *Transguard Ins. Co. of America, Inc. v. Hinchey*, 464 F. Supp. 2d 425 (M.D. Pa. 2006) (citing *Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Marketing Board*, 298 F.3d 201, 210 n.12 (3d Cir. 2002)). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment

---

[4] If the *Slippery Rock* decision went as far as those school districts claim (and which Peerless implicitly asserts here), namely that the payments to PA Cyber were unearned and illegal, one wonders why the state court lawsuit was not also filed against the PDE for its failure to apply *Slippery Rock* retroactively.

4

as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The parties must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial*," or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(a), (e)) (emphasis in original). In meeting its burden of proof, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The non-moving party "must present affirmative evidence in order to defeat a properly supported motion" and cannot "simply reassert factually unsupported allegations." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989). If the non-moving party's evidence merely is colorable or lacks sufficient probative force, summary judgment must be granted. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 249-50 (1986).

In other words, summary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party. *See id.* at 250. "Where the record taken as a whole could not lead a reasonable trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587; *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009).

In reviewing the record evidence, the court draws all reasonable inferences in favor of the non-moving party. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000);

5

*Matsushita*, 475 U.S. at 587–88; *Huston*, 568 F.3d at 104 (citations omitted). It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. *See Anderson*, 477 U.S. at 255; *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004); *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48. "Where the defendant is the moving party, the initial burden is on the defendant to show that the plaintiff has failed to establish one or more essential elements to his case." *See Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 589 (3d Cir. 2005) (citing *Celotex Corp.*, 477 U.S. at 323–24).

In cases such as this, where cross motions for summary judgment have been filed, each party essentially contends that no genuine issue of material fact exists from its particular point of view. The Court should, therefore, consider each motion for summary judgment separately. *Home for Crippled Children v. Prudential Ins. Co.*, 590 F. Supp. 1490, 1495 (W.D. Pa. 1984). Because each party is moving for summary judgment, each party bears the burden of establishing a lack of genuine issues of material fact. *See id.* Such inherently contradictory claims do "not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives ... determination [of] whether genuine issues of material fact exist." *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968). Moreover, the standards under which a court grants or denies summary judgment do not change by virtue of cross motions being presented. *Home for Crippled Children*, 590 F. Supp. at 1495.

### III. DISCUSSION

The substantive law of Pennsylvania provides the rule of decision in this case. *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 378 (3d Cir. 1990) (citing *Erie R.R. Co. v. Tompkins*, 304

U.S. 64 (1938)). Under Pennsylvania law, an insurer may seek a declaratory judgment on the rights and obligations of parties to an insurance contract, including whether the insurer is duty-bound to defend and/or indemnify an insured making a claim under a policy. *Gen. Accident Ins. Co. of Am. v. Allen*, 692 A.2d 1089, 1095 (Pa. 1997). When an insurer seeks such a declaration, it is the Court's task to interpret the insurance contract in question and determine whether coverage exists. *401 Fourth St. v. Investors Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005).

A. **Duty to Defend**

An insurer's duty to defend an insured is distinct from, and broader than, its duty to indemnify an insured. *Am. and Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 540-41 (Pa. 2010) (internal citations omitted). The insurer must defend its insured if the underlying complaint alleges facts which, if true, would actually or potentially bring the claims within the coverage of the policy. *Id.* If a single claim in the complaint could be potentially covered, the insurer must defend the entire lawsuit until there is no possibility of recovery on any covered claim. *Erie Ins. Exch. v. Transam. Ins. Co.*, 533 A.2d 1363, 1368 (Pa. 1987). An insurer is released from its duty to defend only when it is apparent on the face of the complaint that none of the claims fall within the coverage of the policy. *Peerless Ins. Co. v. Brooks Sys. Corp.*, 617 F.Supp.2d 348, 356 (E.D. Pa. 2008).

Courts engage in a two-step process to determine whether an insurer has a duty to defend an insured. First, the court must identify the scope of coverage under the policy. *Allen*, 692 A.2d at 1095. The primary objective is "to ascertain the parties' intentions as manifested by the policy's terms." *Kvaerner Metals v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006). Second, the court examines the underlying complaint to determine whether the allegations it sets forth trigger coverage. *Allen*, 692 A.2d at 1095. Those allegations "are to be taken as true and

7

liberally construed in favor of the insured." *Biborosch v. Transamerica Ins. Co.*, 603 A.2d 1050, 1052 (Pa. 1992). The particular causes of action alleged are not determinative of whether the duty to defend is triggered; the court must focus solely on the factual averments in the complaint. *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999).

### 1. Scope of the Policy

The liability policy defines "loss" as "monetary damages, judgments (including prejudgment interest awarded against the insured on that part of the judgment paid by us), or settlements." ECF No. 25-4 at 22. "Loss" does not include "[c]osts of compliance with any injunctive or other non-monetary relief action," or "'legal fees' when solely injunctive or other non-monetary relief is sought." *Id.* Therefore, Peerless would only have a duty to defend PA Cyber against a lawsuit that in some respect sought legal relief or compensatory damages. "Loss" also does not include "tuition expenses" if at the time of the "wrongful act," the insured had "programs and facilities that would have provided appropriate special education and related services in accordance with the Individuals with Disabilities Education Act of 1990 and any amendments thereto."[5] *Id.*

A "wrongful act" is "any actual or alleged act, breach of duty, neglect, error, omission, misstatement, or misleading statement committed by the insured, or by any person for whose acts the insured is legally liable, while in the course of performing 'educational institution' duties." *Id.* at 23. The policy limits coverage to "'wrongful acts' to which the insurance applies," *id.* at 7, so the "wrongful act" must be otherwise covered under the Policy to trigger Peerless' duty to defend. The Policy also contains an "Illegal Profit or Advantage" exclusion ("the illegal profit

---

[5] Given the precision of this definitional exclusion, it would appear that the non-covered "tuition expenses" would be only those related to providing "appropriate special education and related services" compelled by IDEA. The Court, however, need not resolve the import of that definition, given the conclusion that payments under the Charter School Law are not "tuition" in any event.

8

exclusion"), which precludes coverage for "any insured who commits a 'wrongful act' that gains or causes another to gain personal profit or advantage to which the insured or other person was not legally entitled." *Id.* at 11.

### 2. The Underlying Complaint

#### a. "Loss"

Peerless does not dispute that the Underlying Complaint alleges a "wrongful act" covered by the Policy.[6] Instead, Peerless contends that the factual averments in that Complaint do not give rise to any potential "loss" to PA Cyber under the Policy. The Underlying Complaint claims that over a number of years, PA Cyber submitted payment requests to school districts for certain students who resided in those districts but were not eligible for enrollment there, and the school districts issued payments to PA Cyber in the belief that they had a "legal duty to fund the education of all students who enrolled in PA Cyber." ECF No. 1-4 at 5-6. That Complaint further charges that PA Cyber was not entitled to those payments and seeks "restitution" and "reimbursement" from PA Cyber. *Id.*

PA Cyber argues that in demanding "a sum in excess of $50,000" as to each count, the Underlying Complaint *is* asking for monetary damages, but "the fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" *Bowen v. Mass.*, 487 U.S. 879, 893 (1988). The Supreme Court has recognized a distinction between an action for damages – "which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation" – and an action for equitable relief – "which may include…'the recovery of specific property *or monies.*'" *Id.* (quoting *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 688 (1949))

---

[6] And in the Court's estimation, it does. The Underlying Complaint alleges that PA Cyber requested payments from the plaintiffs, received and retained those payments, was not entitled to them, and has failed to return them to the plaintiffs. These averments satisfy the broad definition of "wrongful act" contained in the Policy.

9

(emphasis in original). Restitution is "limited to 'restoring the status quo and ordering the return of that which rightfully belongs to'" a plaintiff. *Tull v. United States*, 481 U.S. 412, 424 (1987) (quoting *Porter v. Warner Holding Co.*, 328 U.S. 395, 402 (1946)). As the Court has already stated, the policy definition of "loss" does not cover equitable relief.

However, courts have not uniformly precluded the possibility of a "loss" when restitutionary claims are asserted. *See Level 3 Commc'ns, Inc. v. Fed. Ins. Co.*, 272 F.3d 908, 910-11 (7th Cir. 2011) (holding that "an insured incurs no loss within the meaning of the insurance contract by being compelled to return property that it had stolen, even if a more polite word than 'stolen' is used to characterize the claim for the property's return," but imagining other "situations in which there would be a covered loss" involving expenses "not offset by any benefit…unlike the 'expense' that consists simply of the value of the stolen property."); *Fed. Ins. Co. v. Cont'l Cas. Co.*, 2006 WL 3386625 at *23-24 (applying Pennsylvania law and citing *Level 3* in holding that "it is far from clear that [defendants] have suffered no 'loss' with respect to" underlying claims for avoidance and recovery of transfers to corporate directors and for fraudulent conveyances).

PA Cyber necessarily incurred expenses in educating the students from the plaintiff school districts who enrolled at PA Cyber. Monies derived from the school districts' payments or redirected state subsidies under the Charter School Law presumably helped to offset those expenses. If ordered to repay the funds, PA Cyber would be placed in the position of having expended at least some resources to educate four-year-old students from the plaintiff school districts without any compensation or benefit in return. Pursuant to the Seventh Circuit's reasoning in *Level 3* (also cited in *Southcentral Emp't Corp. v. Birmingham Fire Ins. Co. of Pa.*, 926 A.2d 977, 982 (Pa. Super. Ct. 2007)), that would arguably qualify as a "loss." It follows that

10

this is not a case analogous to *Republic W. Ins. Co. v. Spierer, Woodward, Willens, Denis & Furstman*, 68 F.3d 347, 351-52 (9th Cir. 1995), where the court held that an attorney's refund of *unearned* legal fees was restitution and not "damages" covered by an insurance policy, because a finding of coverage there would essentially require the insurer to pay the attorney a windfall he did not earn.

Additionally, the class action allegations portion of the Underlying Complaint refers to "the damages suffered by each class member" and requests an award of "damages, interest and costs" to the proposed class. While costs cannot be properly construed as compensatory damages, *see Pa. Cty. Risk Pool v. Northland Ins.*, 2009 WL 506369, at *10 (M.D. Pa. Feb. 27, 2009), a prayer for damages and interest appears to fall squarely within the Policy's definition of "loss." "Damages" are "money claimed by, or ordered to be paid to, a person as compensation for loss or injury." *Black's Law Dictionary* 445 (9th ed. 2009). The policy also explicitly includes prejudgment interest within "loss." By requesting damages and interest, the plaintiffs indicate that they are not only seeking reimbursement of monies to which they allege they are already entitled and PA Cyber retained, but also monetary damages in compensation for losses suffered as a result of that retention. In light of that, along with each individual count's request of "a sum in excess of $50,000," and the possibility (if not certainty) that PA Cyber would incur a "loss" by having to return payments that it used to fund its own operations, the Court concludes that it is likely that at least one of the claims alleged against PA Cyber falls within the coverage of the Peerless Policy.[7]

---

[7] Peerless cites to *Southcentral Emp't Corp. v. Birmingham Fire Ins. Co. of Pa.*, 926 A.2d 977 (Pa. Super. Ct. 2007), for the proposition that the return of funds to which one is not legally entitled cannot fall within the definition of "loss." In that case, the Pennsylvania Department of Labor issued a final determination that Southcentral was required to repay to it a large sum of money in connection with "expenditures made by [Southcentral] during the course of its contracts with the Department of Labor" due to its inability to account for those expenditures. 926 A.2d at 978. The court held that because "Southcentral was not legally entitled to keep these funds, their return can hardly be deemed a 'loss' for insurance purposes." *Id.* at 982. In the court's view, the money Southcentral was

The Court next confronts the issue of whether the payments in question were "tuition expenses," which are excluded from the definition of "loss." The Charter School Law sets out the manner in which funding for charter schools is provided. 24 Pa. Cons. Stat. § 17-1725-A(a). The first sentence of that section reads: "There shall be no tuition charge for a resident or non-resident student attending a charter school." *Id.* § 17-1725-A(a)(1). The rest of the section details the way payments are received from the school district in which a student resides. *Id.* § 17-1725A(a)(2)-(e). Not only does the Charter School Law disclaim that the funding of education at a charter school is "tuition," but it is plain from the structure of that law that it is set up to transfer from the public school district to the charter school an amount keyed to the costs of instruction as measured by the program in the public school district, and is not based on an invoiced or actual charge for instruction from the charter school, the *sine qua non* of "tuition." *See* 24 Pa. Cons. Stat. § 17-1725-A(a)(2)-(3). The payments are a legislatively-mandated funding transfer, not "tuition." This assessment of the Charter School Law's payment scheme is

---

required to repay to the Department of Labor, "whether wrongfully acquired willfully or by mistake or accident, is nonetheless not an insurable loss. These are restitutionary funds and are not recoverable." *Id.* The facts of *Southcentral*, however, are distinguishable from this case. While the Underlying Complaint does ask for "restitution" of funds it claims PA Cyber was not entitled to, it also clearly demands damages and interest, which would qualify as a "loss" under the Policy. Also, in *Southcentral*, the court was dealing with the final determination of a government body ordering the return of funds that by law the insured was never entitled to. This Court is instead construing a complaint that, at various points, asks for "restitution," "reimbursement," and "damages, interest and costs," in a situation in which PDE's policy plainly contemplates the conclusion that prior to the *Slippery Rock* decision, PA Cyber (and other charter schools) were entitled to the funds received. It is at best unclear from the language of the Underlying Complaint whether the plaintiffs there are asking for only equitable relief in the form of recovery of specific monies, or monetary damages as well. Further, given that the payments were initially approved by the PDE, and neither it nor the Pennsylvania Supreme Court directed their refund, or even intimated that PA Cyber had not provided services for value received or was retaining funds it never earned, the analogy to *Southcentral* is simply inapt. This case is also distinguishable from *Int'l Ins. Co. v. Metro. St. Louis Sewer Dist.*, 938 F.Supp. 568 (E.D. Mo. 1996), where the court held that the defendant, a local government body, did not suffer a "loss" when the Missouri Supreme Court ordered it to refund to customers increased sewer charges implemented by an ordinance the Missouri Supreme Court invalidated as unconstitutional. 938 F.Supp. at 570. The court held that the suit did not present any claim for legal damages because "the [d]efendant's customers only paid the increased service charge because the trial court erroneously denied their injunction in [the underlying litigation]. Such a proceeding is one in equity." *Id.* at 571-72. (citing *Tull v. United States*, 481 U.S. 412 (1987), for the proposition that an action for disgorgement of improper profits is traditionally considered an equitable remedy). Here, the Underlying Complaint requests damages along with restitution, and the plaintiffs in the Underlying Lawsuit voluntarily made the payments at issue to PA Cyber for years without any court order to do so.

buttressed by the PDE's withholding of state subsidy to the public school district in the designated amount if, as in *Slippery Rock*, the local district fails to make its direct remittance. *Slippery Rock*, 31 A.3d at 658-59; *see also* 24 Pa. Cons. Stat. § 17-1725-A(a)(5)-(6). For those reasons, the payments simply cannot be construed as excluded "tuition expenses."[8]

Peerless also contends that PA Cyber is uninsured for the claimed "loss" as a matter of public policy under the Pennsylvania Supreme Court's decision in *Central Dauphin Sch. Dist. v. Am. Cas. Co.*, 426 A.2d 94 (Pa. 1981). In *Central Dauphin*, a school district sought to recover from its insurance carrier the amount it was ordered by a court to return to local taxpayers as a result of imposing an unlawful tax, claiming a "loss" under the relevant policy. *Id.* at 95. The court held that "the public policy of [Pennsylvania] would be offended by permitting a political subdivision to use public funds to purchase 'insurance' against court-ordered and statutorily-mandated refunding of taxes collected through an unlawful taxing measure." *Id.* at 96. The court's primary concern was that the school district should not be able to retain revenue generated by an unlawful tax by collecting insurance proceeds. *Id.* As a result, the court held that there was no "loss" within the meaning of the policy. *Id.* at 97.

As this Court has previously recognized, "[s]ince its decision in *Central Dauphin*, the Pennsylvania Supreme Court has consistently limited the scope of the 'public policy' rationale for uninsurability." *Fed. Ins. Co.*, 2006 WL 3386625 at *22. In *Hall v. Amica Mut. Ins. Co.*, the court emphasized that only in the "clearest cases" could an alleged public policy be the basis of a

---

[8] Peerless points to the Pennsylvania Supreme Court's decision in *Mosaica Acad. Charter Sch. v. Com. Dept. of Educ.*, 813 A.2d 813 (Pa. 2002), in which the court often refers to the payments school districts are required to make to charter schools under the Charter School Law as "tuition subsidies." However, the proper characterization of those payments was not at issue in *Mosaica* – the question in that case was whether the Charter School Law required the Philadelphia School District to make payments for students that resided in the city of Philadelphia to a charter school located outside the city. *Id.* at 818. The word "tuition" is not found once in the Pennsylvania Supreme Court's majority opinion in *Slippery Rock*, where the characterization of those payments was similarly a non-issue. A court's one-time choice of vernacular in a non-precedential setting cannot outweigh the established and context-supported definition of "tuition."

13

judicial decision. 648 A.2d 755, 761 (Pa. 1994) (quoting *Mamlin v. Genoe*, 17 A.2d, 407, 409 (Pa. 1941)). More specifically, in *BLaST Intermediate Unit 17 v. CNA Ins. Co.*, the court held that an insured suffered an insurable "loss" by paying judgments rendered against it by a federal court for violations of Titles VII and IX of the Civil Rights Act of 1964. 674 A.2d 687, 687-88, 691 (Pa. 1996). In its opinion, the court remarked on its holding in *Central Dauphin*:

> Because the tax was unlawful, the school district was never entitled to revenue from the taxes. Clearly, there was no loss to the school board; rather, the school board would have realized a windfall if allowed to collect from its insurance carrier after refunding the taxes. It was obviously against public policy to allow the school district to use unlawful activity as a money-making endeavor.

*Id.* at 690. The court found an important difference in the facts of *BLaST* – although the plaintiff had violated a statute, it would not receive a windfall from indemnification. *Id.* at 691. It would merely be returned to the position it was in prior to the judgment. *Id.* Additionally, allowing indemnification would not encourage unlawful activity, as the plaintiff's conduct was negligent, not intentional. *Id.* The court concluded that the purchase of insurance by a public entity to protect taxpayer funds from negligent behavior should be encouraged. *Id.*

This is not the clearest of cases that would justify the Court declaring the "loss" claimed by PA Cyber to be uninsurable on public policy grounds. PA Cyber was not gaining revenue to which it was never entitled from an illegal "money-making endeavor." It was collecting payments it (and the school districts themselves) believed it was entitled to and presumably using those payments to fund its operations, including the education of its students. Until the Pennsylvania Supreme Court handed down its decision in *Slippery Rock* in 2011, no indication existed that that belief was anything but in conformity with the Charter School Law – both the PDE and the Pennsylvania Commonwealth Court confirmed that. Further, given that component parts of two (2) branches of state government – the Pennsylvania Supreme Court and the PDE –

14

have disclaimed that payments made prior to November 23, 2011 were facially unlawful under state law (by *not* ordering retroactive reimbursement), it would be more than a bit of a stretch for this Court to conclude they were, which is the necessary premise of Peerless' public policy argument. The Court simply cannot conclude that PA Cyber's actions were even negligent under the circumstances, much less intentional or otherwise unlawful.

More importantly, PA Cyber would not receive a windfall from coverage under the Policy. Should the Fayette County court decide that PA Cyber must return payments for the four-year-old students under *Slippery Rock*, indemnification would merely return PA Cyber to the position it was in prior to that decision, having received payments related to students for whom it surely expended at least some resources to educate. The Court therefore concludes that the public policy considerations outlined in *Central Dauphin* do not apply to this case.

### b. The Illegal Profit Exclusion

Peerless also argues that the illegal profit exclusion contained in the Policy – barring coverage of "any insured who commits a 'wrongful act' that gains or causes another to gain personal profit or advantage to which the insured or other person was not legally entitled" – precludes any possibility of coverage in the Underlying Lawsuit. When an insurer asserts that a policy exclusion relieves it of the duty to defend, it bears the burden of proving that the exclusion is applicable to the attendant circumstances. *Erie Ins. Exch.*, 533 A.2d at 1366 (quoting *Armon v. Aetna Cas. and Sur. Co.*, 87 A.2d 302 (Pa. 1952)). When arguing that an insured is not entitled to coverage because of an illegal profit exclusion, an insurer must cite to allegations in the complaint that an insured gained illegal profit or advantage. *Alstrin v. St. Paul Mercury Ins. Co.*, 179 F.Supp.2d 376, 399 (D. Del. 2002).

15

In *Lebanon Sch. Dist. v. Netherlands Ins. Co.*, 2013 WL 308702 (M.D. Pa. Jan. 25, 2013), the court confronted a similar illegal profit exclusion. In that case, an insurance company refused to defend a school district against a suit alleging that the school district and its officials sought truancy fines that exceeded the amount allowable under the Pennsylvania Public School Code and colluded with magisterial district courts to selectively adjust only the fines that remained outstanding. 2013 WL 308702 at *1. The complaint there sought reimbursement of the allegedly excessive fines that had already been paid. *Id.* The court held that the relief sought in the complaint would not constitute a "loss" under the relevant policy because there was no prayer for legal damages, *id.* at *4, and that the school district was precluded from seeking coverage under the illegal profit exclusion contained in the policy. *Id.* at *7. The court decided that the illegal profit exclusion was implicated by the factual averments in the underlying complaint, which specifically alleged that the school district "sought and obtained" truancy fines excessive of those permitted by law and withheld excessive fines, enabling it to "retain profit it would not be entitled to" under the law. *Id.*

The case at hand strikes the Court as being notably different from *Lebanon*. In that case, the school district's alleged activity in charging excessive fines was facially contrary to positive law at the time it was committed. Here, the Underlying Complaint charges that PA Cyber requested payments from school districts for children who were ineligible for their own kindergarten programs, and the school districts remitted those payments without protest. In making the payments, the school districts allegedly erred in assuming that they had a legal duty to fund the education of all students who enrolled in PA Cyber. Such averments are distinguishable from those in *Lebanon*, where the underlying complaint alleged that the school district facially violated established law, was confronted, and conspired with the local minor

16

judiciary to selectively adjust unpaid overcharges while retaining those already paid. No "mistake of law" was alleged in that complaint. Additionally, in *Lebanon*, indemnification would have rewarded the school district with a "profit" for charging unlawful fines. Indemnification in this case would simply offset the losses PA Cyber incurred to pay for the education of the four-year-old students who enrolled there.

The facts alleged in this Underlying Complaint hew closer to those in *Harrisburg Area Cmty. Coll. v. Pac. Emp'rs Ins. Co.*, 682 F.Supp. 805 (M.D. Pa. 1988). There, the court ordered an insurance company to indemnify a community college for repayment of an excess of funds received when it erroneously overcharged a federal grant program for the cost of providing educational courses to state prisoners. *Id.* at 806-07. There was no evidence that the community college's incorrect calculations of the grant amounts were anything but an "honest mistake." *Id.* at 807. The court held that the community college suffered a "loss" under the relevant policy "to the extent that it has not received compensation for services rendered." *Id.* at 813. It also rejected the argument that the community college could not receive coverage due to an illegal profit exclusion in the policy, writing:

> That [the community college] did not collect the full costs of the program from the students does not mean that the reimbursement it received from the federal government was profit or gain to [the community college]. Moreover, [the community college] was not engaging in creative bookkeeping…[it] provided a service to the student prisoners.

*Id.*

In a similar fashion, PA Cyber rendered services by providing an education to four-year-old students with the expectation that those services would be compensated for by funding from the students' school districts. The school districts' consistent payments for those students reinforced PA Cyber's expectation. As in *Harrisburg Area*, the payments did not constitute pure

17

profit or gain to PA Cyber – they went to fund educational services the charter school provided. Further, the Court sees a direct parallel between the "honest mistake" in *Harrisburg Area* and the "mistake of law" alleged in the Underlying Complaint. The Underlying Complaint does not claim that PA Cyber knew it was violating the law or even doing something improper when it requested and received the payments. In fact, it admits that the plaintiffs thought their actions in making the payments were required by law. Under these circumstances, the Court concludes that Peerless has not met its burden to demonstrate that the illegal profit exclusion precludes coverage under the facts alleged in the Underlying Complaint.

### B. Duty to Indemnify

A court cannot determine an insurer's duty to indemnify on the basis of whether the factual allegations in the complaint potentially state a covered claim against the insured. *Regis Ins. Co. v. All Am. Rathskeller, Inc.*, 976 A.2d 1157, 1161 (Pa. Super. Ct. 2009) (internal citations omitted). Rather, the duty to indemnify only attaches when the insured is held liable for a claim actually covered by the policy. *Britamco Underwriters, Inc. v. Stokes*, 881 F.Supp. 196, 198 (E.D. Pa. 1995) (internal citations omitted). Therefore, the duty to indemnify "does not arise until the liability imposed against the insured is conclusively established." *USX Corp. v. Adriatic Ins. Co.*, 99 F.Supp.2d 593, 612 (W.D. Pa. 2000) (internal citations omitted).

While under Pennsylvania law, this Court may declare that an insurer has a duty to indemnify the insured in the event of any liability in the underlying action, *Allen*, 692 A.2d at 1095-96, it declines to do so, at least at this juncture. The Underlying Complaint alleges some conduct and prays for some relief that is arguably covered under the Policy and some conduct and some relief that may not be, and the Court cannot determine from the limited existing record whether PA Cyber will be found liable, and if so on what basis. Therefore, the Court will not

declare that Peerless has a duty to indemnify PA Cyber in the event it is found liable in the Underlying Lawsuit, or that it does not. *See Allstate Ins. Co. v. Brown*, 834 F.Supp. 854, 858 (E.D. Pa. 1993). The Court will leave it to the Fayette County Court of Common Pleas to characterize the conduct and relief, if any, for which PA Cyber is found liable and then, as necessary, revisit the indemnity issue in this case. Consequently, the Court will stay and administratively close this case pending the outcome of the Underlying Lawsuit, and will take up the scope of the indemnification issue at such time as a judgment, order, or settlement makes it ripe for adjudication.

## IV. **CONCLUSION**

For the reasons stated in this Opinion, the Court will grant Defendant's Motion for Summary Judgment to the extent that it finds that the Plaintiff has a duty to defend the Defendant in the underlying Fayette County action based on the coverage of the relevant insurance policies. Defendant's Motion for Summary Judgment will otherwise be denied without prejudice. Plaintiff's Motion for Summary Judgment will be denied. The Court will stay and administratively close the case, pending the resolution of the proceedings in the Underlying Lawsuit.

An appropriate Order will follow.

_____
Mark R. Hornak
United States District Judge

Dated: May 13, 2014
cc: All counsel of record