IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PEERLESS INSURANCE COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE PENNSYLVANIA CYBER ) <br> CHARTER SCHOOL, ) <br> ) <br> Defendant. ) | Civil Action No. 2:12-cv-1700 <br><br> Judge Mark R. Hornak |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

In this insurance coverage case, Plaintiff Peerless Insurance Company ("Peerless") sought a declaratory judgment from the Court that it was not required, under the terms of two Peerless insurance policies ("the Policy") purchased by the Defendant, the Pennsylvania Cyber Charter School ("PA Cyber"), to defend or indemnify PA Cyber against a lawsuit filed by four Pennsylvania school districts ("School Districts") in the Fayette County Court of Common Pleas. The Court determined that, pursuant to the terms of the Policy and the allegations contained in the School Districts' complaint ("the Underlying Complaint"), Peerless had a duty to defend PA Cyber, granted PA Cyber's motion for summary judgment to that extent, and denied Peerless' motion for summary judgment on the coverage issue. *See Peerless Ins. Co. v. Pa. Cyber Charter Sch.*, 2014 WL 1917486 (W.D. Pa. May 13, 2014). Peerless promptly filed a motion for reconsideration of the Court's Order, contending that the Court whiffed at the pitch in concluding that the Policy could conceivably cover at least one of the claims in the Fayette County suit.

1

The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to address newly discovered evidence. *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Such a motion will only be granted if the moving party demonstrates (1) an intervening change in the controlling law; (2) the existence of new evidence that was unavailable when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice. *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (internal citation omitted). As this Court has stated, a motion for reconsideration that "essentially restates, with added vigor, the arguments made previously" does not satisfy this "substantial standard." *Trunzo v. Citi Mortg.*, 876 F.Supp.2d 521, 544 (W.D. Pa. 2012). *Cf. Davila v. N. Joint Reg'l Police Bd.*, 2014 WL 3735631 (W.D. Pa. July 28, 2014).

Peerless trots out three arguments it also asserted in its summary judgment papers – that the underlying claims do not give rise to any potential "loss" under the Policy, that Pennsylvania public policy bars coverage for the claims, and that the Illegal Profit or Advantage Exclusion contained in the Policy precludes coverage in this case. It contends that the Court's summary judgment Opinion, in discounting those arguments, made clear errors of law, resulting in manifest injustice to Peerless. The Court disagrees and will deny the motion, and will briefly readdress each of Peerless' arguments for purposes of clarity.

Peerless first argues that in determining whether the underlying claims fell within the scope of "loss," the Court misconstrued the language of the Policy. The coverage section of the School Leaders Errors and Omissions Liability Coverage Form provides: "We will pay those sums that the insured becomes legally obligated to pay because of 'loss' arising from a 'wrongful act' to which this insurance applies." ECF No. 25-4 at 7. According to Peerless, because the Court considered whether PA Cyber had reaped a gratuitous benefit from payments to it by the

2

School Districts (and would therefore suffer a loss if it had to make refunds to the School Districts), the Court erred in reading the Policy to provide coverage for a "loss" suffered by PA Cyber, while it actually covers "loss" suffered by a third party, as a result of a "wrongful act" by PA Cyber, that the third party then seeks to recover from PA Cyber.

The principal cases cited by the parties at summary judgment analyzed "loss" from the perspective of the insured.[1] Peerless cited case law at summary judgment that analyzed "identical, or near identical" policies' "loss" coverage from the perspective of the insured, ECF No. 30 at 13, but contends here that because the Policy covers "loss" only from the perspective of a third party who asserts claims against the insured, the Court missed the pitch.[2]

The Court did observe that the return of funds sought by the Underlying Complaint could be seen as a "loss" to PA Cyber, since it presumably used the funds to educate students from the School Districts, and would therefore not receive a windfall from the insurance proceeds. *Peerless*, 2014 WL 1917486 at *5-6. At the same time, Peerless fails to recognize that the Court focused on any loss to PA Cyber in order to address Peerless' core argument that because the

---

[1] *See Southcentral Emp't Corp. v. Birmingham Fire Ins. Co. of Pa.*, 926 A.2d 977, 982 n.2 (Pa. Super. Ct. 2007) ("[W]e agree with the general proposition…that even where inadvertently acquired, money or property that has to be returned does not belong to the insured and therefore the insured has not suffered a loss."); *Central Dauphin Sch. Dist. v. Am. Cas. Co.*, 426 A.2d 94, 95-97 (Pa. 1981) (holding that because a tax imposed by a school district was unlawful, the school district was never entitled to revenue from the taxes and there was no "loss" to the school board in repaying funds received from the tax); *BLaST Intermediate Unit 17 v. CNA Ins. Co.*, 674 A.2d 687, 691 (Pa. 1996) ("[The insured] did suffer a loss, and there is no legitimate public policy reason which should disallow this loss under [the insured's] insurance coverage."); *Lebanon Sch. Dist. v. Netherlands Ins. Co.*, 2013 WL 308702, at *1-4 (M.D. Pa. Jan. 25, 2013) (analyzing "loss" from the perspective of the plaintiff, who sued for a declaratory judgment of coverage for an underlying action seeking declaratory and injunctive relief for restitution of illegal fines); *Harrisburg Area Cmty. Coll. v. Pac. Emp'rs Ins. Co.*, 682 F.Supp. 805, 812-13 (M.D. Pa. 1988) (the insured "suffered a loss to the extent that it has not received compensation for services rendered.")

[2] Peerless cites to *Port Auth. of New York and New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2012), where the Third Circuit wrote, "[t]he primary aim of third-party insurance is to defend and indemnify insureds against liability for claims made against them as a result of their own conduct. First-party coverage, on the other hand, protects against loss caused by injury to the insured's own property. Wholly different interests are protected by the two distinct forms of coverage." That does not discount the fact that third-party insurance may also indemnify insureds against "loss" they suffer when ordered to pay a money judgment or restitution as a result of their own conduct.

3

School Districts were seeking restitution or disgorgement of the funds paid to PA Cyber, there was no "loss" here, as that term is used in the Policy. *Id.* at \*5-7.

The claims alleged in the underlying lawsuit could be covered by the Policy, triggering the duty to defend PA Cyber. Peerless argues that the Underlying Complaint alleges no "loss" because it avers PA Cyber was never legally entitled to the funds in question, i.e., this is a "restitution" case. The Policy language contains no such limitation or definitional exclusion of "restitution," and defines "loss" as "monetary damages, judgments (including prejudgment interest awarded against the insured on that part of the judgment paid by us), or settlements." ECF No. 25-4 at 22. As the Court noted in its Opinion, courts have not uniformly excluded restitutionary claims from coverage of "loss" where the restitutionary funds are offset by a benefit provided or services rendered by the insured. *See Level 3 Commc'ns, Inc. v. Fed. Ins. Co.*, 272 F.3d 908, 910-11 (7th Cir. 2011); *Harrisburg Area Cmty. Coll. v. Pac. Emp'rs Ins. Co.*, 682 F.Supp. 805, 812-13 (M.D. Pa. 1988). Thus, to address Peerless' "restitution does not count" argument at summary judgment, the Court necessarily had to address whether there could be a "loss" to PA Cyber by virtue of its rendering of what would be uncompensated educational services under Peerless' theory.

Further, the Underlying Complaint seeks "damages suffered by each class member" and an award of "damages, interest and costs" for a proposed class of school districts. Such an award would plainly fall within the Policy's definition of "loss." Peerless argues that in considering the nature of the relief requested, the Court erred by focusing on Policy terms "in a manner that misapprehended and/or misconstrued the coverage afforded," ECF No. 44 at 5, but the Court again disagrees. It concluded that the facts alleged by the Underlying Complaint could potentially implicate a covered "loss," and then bolstered that conclusion with the fact that the

4

Underlying Complaint sought relief, pursuant to its factual allegations, that plainly fell within the Policy definition of "loss."[3] Other courts have engaged in a similar duty to defend analysis. *See Lebanon Sch. Dist. v. Netherlands Ins. Co.*, 2013 WL 308702, at *4 (M.D. Pa. Jan. 25, 2013) (holding that the defendant had no duty to defend an insured pursuant to a class action complaint where the plaintiffs sought only "declaratory and injunctive relief…and equitable restitution of…illegal fines paid" to the insured, and noted that "nowhere in the complaint do the plaintiffs seek legal damages").

Next up is Peerless' argument that the Court erred by failing to hold that Pennsylvania public policy, as articulated by the Pennsylvania Supreme Court in *Central Dauphin Sch. Dist. v. Am. Cas. Co.*, 426 A.2d 94 (Pa. 1981), barred coverage here. Peerless takes issue with the Court's conclusion that "PA Cyber collected payments and, along with the underlying school districts, believed that it was entitled to receive those payments," *Peerless*, 2014 WL 1917486, at *7, because the Underlying Complaint does not explicitly aver that PA Cyber believed as much. While that is true, the argument ignores some important things. Most importantly, the time period alleged in the Underlying Complaint is prior to the issuance of the Pennsylvania Supreme Court's opinion in *Slippery Rock Area Sch. Dist. v. Pa. Cyber Charter Sch.*, 31 A.3d 657 (Pa. 2011), which held for the first time that PA Cyber was *not* entitled to such payments. Before the Supreme Court's ruling, pursuant to the determinations of the Pennsylvania Department of Education ("PDE") and then the Pennsylvania Commonwealth Court, PA Cyber *was* legally entitled to those funds. Additionally, the Underlying Complaint pleads that the

---

[3] Peerless also argues that the demand in the Underlying Complaint for prejudgment interest does not trigger the definition of "loss" on the basis that there can be no "prejudgment interest" until there is a judgment that creates the "loss". Peerless's argument is not only circular, but is contrary to the language of its own definition of "loss", and ignores the fact that as a general matter under Pennsylvania law, when the amount claimed is a certain, liquidated amount, then prejudgment interest is part of the judgment as a matter of right. *See Cresci Construction Services, Inc. v. Martin,* 64 A.3d 254 (Pa. Super. 2013). That rule would apply here, as the School Districts appear to set the measure of their core damages at a certain amount, e.g. the amount they paid to PA Cyber. To that extent, then, prejudgment interest would be triggered as of right, and would fall squarely within the Policy's definition of "loss."

School Districts themselves believed the law required them to remit the funds at issue to PA Cyber.

It is a maxim of Pennsylvania insurance law that in a duty to defend analysis, "the factual allegations of the complaint are taken to be true and the complaint is to be liberally construed with all doubts as to whether the claims may fall within the coverage of the policy to be resolved in favor of the insured." *Biborosch v. Transamerica Ins. Co.*, 603 A.2d 1050, 1052 (Pa. 1992) (citing *Cadwallader v. New Amsterdam Cas. Co.*, 152 A.2d 484 (Pa. 1959)). The Court was doing exactly that in drawing a logical inference from the facts alleged in the Underlying Complaint that PA Cyber was entitled to the payments at issue, due to both the state of positive law and the actions and beliefs of the payors themselves during the time period addressed by the Underlying Complaint. The Court detects no clear error of law in its decision as to the application of *Central Dauphin* (which Peerless once again urges the Court, in contravention of later and directly on-point Pennsylvania Supreme Court case law[4], to apply broadly as to all "claims for reimbursement of funds that were incorrectly paid, or to which the insured is (allegedly) not legally entitled") or Pennsylvania public policy generally.[5]

Peerless also argues that the Court "misapplied the policy and the law" by holding that Peerless failed to prove that the Illegal Profit or Advantage Exclusion applied. That exclusion

---

[4] *See Hall v. Amica Mut. Ins. Co.*, 648 A.2d 755, 761 (Pa. 1994); *BLaST Intermediate Unit 17 v. CNA Ins. Co.*, 674 A.2d 687, 687-91 (Pa. 1996); *Minnesota Fire and Cas. Co. v. Greenfield*, 855 A.2d 854, 867 n.14 (Pa. 2004).

[5] Peerless also contends that the Court impermissibly went beyond the scope of the Underlying Complaint in noting that PA Cyber presumably incurred some expense in educating students. It is Peerless who argued (based on decisional law) that restitutionary claims cannot come within the Policy's coverage. As such, to the extent the issue of PA Cyber's costs of instruction were at issue, it was incumbent on Peerless to demonstrate that there was no issue of fact on this point, e.g., that PA Cyber did not incur such expenses. Further, given that there is no allegation anywhere in the record that PA Cyber was some sort of well-meaning volunteer (or a magician) that provided educational services to four-year olds for years without incurring at least some expense to itself in doing so, Peerless' argument asks the Court to suspend reality. Finally, to take Peerless' argument to its logical end, the School Districts would have been required to plead in the Underlying Complaint that PA Cyber had incurred some cost in providing services. Any such pleading by the School Districts would have been both unnecessary and pointless, and their failure to do so cannot derail the efforts of PA Cyber to get the defense it bargained for.

6

precludes coverage for "[a]ny insured who commits a 'wrongful act' that gains or causes another to gain personal profit or advantage to which the insured or other person was not legally entitled." ECF No. 25-4 at 11. The Policy defines "wrongful act" as "any actual or alleged act, breach of duty, neglect, error, omission, misstatement, or misleading statement committed by the insured, or by any person for whose acts the insured is legally liable, while in the course of performing 'educational institution' duties." *Id.* at 23.

Peerless contends that the Court erred in considering that PA Cyber could not have known that what it was doing in receiving funds from the School Districts (the alleged "wrongful act") was anything but lawful, because all that matters is that the Underlying Complaint claims PA Cyber is now "not legally entitled" to the funds it received, a phrase Peerless' brief continually imbues with the power of a coverage-precluding incantation. But the Underlying Complaint also alleges that the School Districts for years affirmatively sent payments to which they believed PA Cyber was entitled at the time, which the School Districts now seek to regain on the authority of *Slippery Rock*. That case, of course, only held that such payments were not required in the future and never addressed prior unlawfulness of such payments or any retroactive application of its holding. 31 A.3d at 667. This scenario simply does not implicate the Illegal Profit or Advantage Exclusion.

The *Harrisburg Area* case, which held an illegal profit exclusion did not apply when an insured was ordered to repay an excess of federal grant money it received to educate federal prisoners after making erroneous calculations, remains instructive. There, the court held that because the insured did not necessarily receive profit or gain from the excess grants because it used them to render educational services, and had simply made an "honest mistake" in its calculations, the insurer had not met *its* burden of proving the application of the exclusion. 682

F.Supp. at 812-13. This case warrants a similar conclusion. The Court simply cannot conclude that it is a certainty, on the facts alleged in the Underlying Complaint, that in receiving the payments in question PA Cyber received any measurable profit or advantage to which it was not entitled flowing from that "act."[6]

"If the factual allegations of the complaint against the insured state a claim which would *potentially* fall within the coverage of the policy, then the insurer has the duty to defend." *Biborosch v. Transamerica Ins. Co.*, 603 A.2d 1050, 1052 (Pa. 1992) (emphasis in original). "It is not the actual details of the injury, but the nature of the claim which determines whether the insurer is required to defend." *Springfield Twp. v. Indemnity Ins. Co. of N. Am.*, 64 A.2d 761, 762 (Pa. 1949). Despite Peerless' re-arguments, made with great conviction, that there is no possibility that the Underlying Complaint could give rise to coverage under the Policy, the Court remains convinced otherwise, and concludes that were it to vacate its Order and reverse course, the promise to defend bargained and contracted for by the parties would not include "all occasions in which the insurer might eventually become liable to pay," and "insurance would cease to mean what it ought to mean" in the context of the Policy at issue. *Cadwallader*, 152 A.2d at 489. The Plaintiff's Motion for Reconsideration is denied.

An appropriate Order will follow.

Mark R. Hornak
United States District Judge

Dated: August 29, 2014
cc: All counsel of record

---

[6] Peerless also argues that the four-year olds received an "illegal profit or advantage" because they got an education that, in light of *Slippery Rock*, the School Districts had no duty to provide at that time. That argument ignores the fact that once the School Districts authorized and paid for their enrollment, those kids were entitled to that education, bought and paid for with public funds. If PA Cyber had received those payments, and not provided the education, then to be sure, the School Districts, or perhaps PDE, would have had a valid legal claim to force PA Cyber to educate those four-year olds as a matter of contract law, at least.

8